UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **J.R., on behalf of her minor child, J.O.,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **MARTIN O'MALLEY, Commissioner** ) <br> **of the Social Security Administration,** ) <br> ) <br> **Defendant.** ) <br> ) | Civil Action No. <br> 23-11815-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
TO REVERSE AND DEFENDANT'S MOTION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

**SAYLOR, J.**

This is an appeal of a final decision of the Commissioner of the Social Security Administration ("SSA") denying the application of plaintiff J.R. for supplemental security income ("SSI") benefits on behalf of her minor son, J.O. Plaintiff appeals the denial of her application on the ground that the decision is not supported by substantial evidence as required by 42 U.S.C. § 405(g). Specifically, plaintiff contends that the administrative law judge ("ALJ") failed to properly weigh the opinions of J.O.'s treating physicians, failed to adequately account for non-medical evidence from J.O.'s family members, failed to consider a relevant listing, failed to properly assess J.O.'s functional equivalence, and failed to properly account for J.R.'s testimony about J.O.'s subjective complaints.

Pending before the Court are plaintiff's motion to reverse the decision of the Commissioner and defendant's motion to affirm the decision of the Commissioner. For the reasons stated below, the decision will be affirmed, and plaintiff's motion to reverse will be

denied.

I.    **Background**

    A.    **Factual Background**

J.R. is the mother of a minor child, J.O.  J.O. was born in October 2013.  (A.R. 18).  He lives in Lowell, Massachusetts, and has a younger sister.  (A.R. 87, 1191).

    1.    **Asthma**

J.O. has persistent asthma.  (A.R. 66).  He was first diagnosed and treated for asthma in April 2015, when he was less than two years old.  (A.R. 675).

On several occasions throughout his life, J.O. has received inpatient treatment for asthma.  (A.R. 778, 1003, 1054).  In 2015, he was admitted to the pediatric intensive care unit at Tufts Medical Center with persistent respiratory distress.  (A.R. 778-79).  Most recently, in 2021, he was admitted to Lowell General Hospital for three days in response to his acute respiratory distress.  (A.R. 10554-55).  Over the years, he has been prescribed Symbicort, Montelukast, Decadron, and Albuterol to control his symptoms.  (A.R. 66).

In J.O.'s daily life, he struggles to run and to exert himself, although he is able to walk and ride a bicycle.  (A.R. 69-70, 79, 311).  He participates in gym class and in recreational baseball, although he requires Albuterol treatment before and after exercise.  (A.R. 70, 74).  He receives nebulizer treatment at least once each night.  (A.R. 78).  He sometimes needs help carrying things upstairs or showering.  (A.R. 70-71).

    2.    **Allergies**

J.O. has allergies to many foods, as well as some medicines and environmental irritants.  (A.R. 73, 625).  His environmental allergies contribute to asthma flare-ups and can worsen existing symptoms.  (A.R. 728, 1213).  He takes Zyrtec and carries an Epi-Pen to manage his

symptoms.  (A.R. 1191).

### 3. Developmental Delays

J.O. struggled to gain weight as a child, and was below fifth percentile BMI until he was five years old.  (A.R. 520, 542, 558, 585).  Between the ages of two and three, his development of communication skills was also delayed.  (A.R. 405-412).  He made some gains during his third year.  (A.R. 395).  He is now ten years old.  (A.R. 18).  Although some of his teachers have suggested that he might have a learning disability, he has no diagnosed condition that would cause learning delays in school.  (A.R. 68-69).  He does not currently have an Individualized Education Plan, although his mother is seeking one.  (A.R. 72).

### 4. State-Agency Clinical Assessments

On October 26, 2020, a state agency medical consultant, Sharon Campion, M.D., reviewed J.O.'s medical records.  (A.R. 91).  Dr. Campion determined that his asthma was a severe impairment but did not meet, medically equal, or functionally equal listing 103.03, which describes disabling asthma.  (A.R. 91).  She found that he had a less than marked limitation in the functional domain of health and physical well-being, but no limitations in any of the other five functional domains.  (A.R. 92).

On April 14, 2021, another state agency medical consultant, Richard Goulding, M.D., reviewed J.O.'s medical records and determined that his asthma was severe but did not meet, medically equal, or functionally equal listing 103.03.  (A.R. 100).  Dr. Goulding found that J.O. had a marked limitation in the domain of physical health and well-being but found no limitations in any other domain.  (A.R. 100).

### 5. Treating Physician Assessments

On January 19, 2022, Kenneth Yoffe, M.D., completed a medical and functional capacity

assessment of J.O. (A.R. 1193). Dr. Yoffe has been J.O.'s pediatrician since he was born, and has seen him "about once per 3 months" during his lifetime. (A.R. 1193).

In his assessment, Dr. Yoffe indicated that J.O. had moderate impairment in the domain of health and physical well-being; moderate impairment in the domain of caring for one's self "depend[ing] on the level of acute illness"; and no more than slight impairment in the domain of moving about and manipulating objects. (A.R. 1194, 1195).

On May 23, 2022, Karissa Brazauskas, M.D., completed an assessment of J.O. (A.R. 1218). Dr. Brazauskas is a pediatric specialist at Tufts Children's Hospital in Woburn who has been treating J.O. since March 2021. (A.R. 1218). She found that J.O. had marked impairment in the domain of moving about and manipulating objects and in the domain of health and physical well-being. (A.R. 1220-21).

On May 25, 2022, Dr. Yoffe completed an updated assessment of J.O. (A.R. 1205). He found that J.O. had marked impairment in the domain of moving about and manipulating objects and in the domain of health and physical well-being. (A.R. 1204-05). He further noted that J.O.'s "asthma has been poorly controlled at times, especially this past winter, necessitating multiple visits to the office or [Emergency Department]." (A.R. 1205).

### 6. Hearing Testimony

The SSA conducted three hearings concerning J.R.'s application for benefits for J.O.— one on February 15, 2022, another on May 17, 2022, and a third on August 9, 2022. Part of the third hearing involved J.R. restating testimony she gave at the first hearing, because the first hearing had been improperly recorded. (A.R. 16).

J.R. testified about J.O.'s medical history, daily activities, and education. (A.R. 66). She reported that in the twelve months prior to her testimony, J.O. had neither been hospitalized nor

received treatment at an emergency room. (A.R. 68). She testified that asthma flare-ups caused him to miss thirty to forty days during the 2021-2022 school year. (A.R. 66-67). She also testified that his doctors do not want her to bring him to the emergency room whenever he has a flare-up, only when Decadron—an oral steroid prescribed as needed—does not abate his symptoms. (A.R. 83).

J.R. further testified that J.O.'s medical care at school primarily involves receiving oral Albuterol thirty minutes before and after gym class. (A.R. 70). She has given the school standing permission to administer nebulizer treatments to J.O. as needed, so she is not informed every time they do so. (A.R. 77). She testified that although the school has not placed limitations on J.O.'s participation in gym class, this reflects the school's attempt to prevent him from feeling "left out." (A.R. 70).

J.R. explained that in general J.O. has trouble engaging in activities that require a "lot of movement." (A.R. 80). According to her, he has trouble running, and as a result, cannot play many of the sports that his peers play. (A.R. 69). Although she enrolled him in a baseball program, he missed half of his games due to his asthma. (A.R. 74). She also testified that she occasionally must help him shower and assist him in taking his laundry up and down the stairs, because those activities are too strenuous for him. (A.R. 71). He frequently has trouble breathing at night, and when that happens, she wakes him up to administer treatment. (A.R. 1187, 78). This happens frequently enough that she moved him from his bedroom on the second floor to the living room on the first floor to limit trips up and down the stairs. (A.R. 78).

As to J.O.'s learning challenges, J.R. explained that he has trouble understanding concepts in school, and frequently gets off track. (A.R. 68-69). She acknowledged that he has not been diagnosed with a condition that would explain his reduced ability to focus. (A.R. 72).

But she testified that his teachers have suggested that he may have a learning disability, and that she is in the process of attempting to obtain an IEP for him.  (A.R. 68, 72).

J.O.'s maternal grandmother, M.E., and her boyfriend, M.H., also submitted statements. (A.R. 418-19).  They care for J.O. on occasion, and reported that he has trouble breathing and does not feel "up to doing any outdoor activity" 60 to 80 percent of the time he spends with them.  (A.R. 418).  They have found that their trips to the park with him are frequently cut short because he needs to rest.  (A.R. 418).  They also explained that when he stays with them, they keep an EpiPen and emergency inhaler on hand.  (A.R. 418).

The SSA engaged Arnold Ostrow, M.D., a clinical professor of pulmonary disease, to testify as a medical expert.  (A.R. 42, 1201).  Dr. Ostrow found that J.O.'s limitations in physical health and well-being were marked, but that that he did not have any impairment in moving and manipulating objects.  (A.R. 49).  Dr. Ostrow testified that while his asthma is a severe impairment, he did not believe that this impairment, individually or in combination with others, rose to the level of a listed impairment.  (A.R. 46).  Dr. Ostrow explained that while J.O. "may episodically have difficulty walking, or running, or doing anything when he has an attack, but independent of attacks, he may not have any problems."  (A.R. 54).

      **B.**     <u>**Procedural Background**</u>

On September 11, 2020, J.R. filed an application for supplemental security income on behalf of J.O.  (A.R. at 18).  The SSA denied the claim on November 30, 2020, and denied a request for reconsideration on May 12, 2021.  (A.R. 15).

J.R. timely filed a request for a hearing before the ALJ.  (A.R. 15).  On February 15, 2022, the ALJ held a telephone hearing, after which he determined that J.R. had not provided sufficient medical evidence for a determination to be made.  (A.R. 15).  The ALJ conducted

subsequent hearings on May 17 and August 9, 2022.

On August 18, 2022, the ALJ determined that J.O. was not disabled and denied the application. (A.R. 30). J.R. timely requested review of the ALJ's decision, which the Social Security Appeals Council denied on June 6, 2023. (A.R. 265-66, 1-6).

J.R. filed this appeal on August 8, 2023. She has moved for an order reversing the decision of the Commissioner. The Commissioner has cross-moved for an order affirming his decision.

## II. Analysis

### A. Standard of Review

Under § 405(g) of the Social Security Act, this Court may affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The ALJ's finding on any fact shall be conclusive if it is supported by substantial evidence, and must be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," even if the record could justify a different conclusion. *Rodriguez v. Secretary of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *see Evangelista v. Secretary of Health and Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987). Moreover, "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ. It does not fall on the reviewing Court." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001). In applying the "substantial evidence" standard, the Court must bear in mind that it is the province of the ALJ, not the courts, to find facts, decide issues of credibility, draw inferences from the record, and resolve conflicts of evidence. *See Irlanda Ortiz v. Secretary of Health and Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal is warranted only if the ALJ committed a

legal or factual error in evaluating plaintiff's claim, as long as the finding is not supported by substantial evidence. *See Manso-Pizarro v. Secretary of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).

### B.     Standard of Entitlement to Minor Child SSI Benefits

The Social Security Act provides that a claimant seeking SSI benefits bears the burden of establishing that he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

In evaluating a minor child's claim of disability, the ALJ is required to follow a three-part analysis. First, the ALJ must determine if the claimant is performing any substantial gainful activity. *See* 20 C.F.R. § 416.924(a). Second, if the claimant is not performing gainful activity, the ALJ must consider if the claimant has an impairment or combination of impairments that is severe. *Id*. Third, if the claimant has a severe impairment, then the ALJ must determine if any impairment or combination of impairments—including those impairments found to be non-severe—meets, medically equals, or functionally equals a listed impairment. *Id.*

A child's impairment will functionally equal a listed impairment if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id*. § 416.926a(a). The six domains that must be assessed are (1) "[a]cquiring and using information;" (2) "[a]ttending and completing tasks;" (3) "[i]nteracting and relating with others;" (4) "[m]oving about and manipulating objects;" (5) "[c]aring for [one's ]self;" and (6) "[h]ealth and physical well-being." *Id*. § 416.926a(b)(1)(i–vi). A domain of functioning will be considered to have a "marked" impairment if it "interferes seriously with [one's] ability to

independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(2)(i). A domain of functioning will be considered to have an "extreme" impairment if it "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." *Id*. § 416.926a(e)(3)(i).

### C. The Administrative Law Judge's Findings

At step one, the ALJ determined that J.O. had not engaged in substantial gainful activity during the period since the initial application date of September 11, 2020. (A.R. 19).

At step two, the ALJ addressed the severity of his impairments. (A.R. 16). He concluded that J.O. had the following severe impairments: asthma and allergies. (A.R. 16). Those impairments more than minimally affect his ability to function, and thus met the threshold level of severity under 20 C.F.R. § 416.924(c). (A.R. 18). The ALJ found that the other impairments raised by J.R., including speech delays, were not severe. (A.R. 19).

At step three, the ALJ found that J.O. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. 19-20). First, the ALJ found that his respiratory impairments did not meet or medically equal listing 103.02, disabling respiratory disorders other than cystic fibrosis. (A.R. 19). Next, the ALJ found that the impairments from his asthma did not meet or medically equal listing 103.03, disabling asthma. (A.R. 19). Finally, the ALJ found that the combination of his impairments did not functionally equal a listed impairment. (A.R. 19). Specifically, he found that J.O. had marked limitations in "health and physical well-being," but less than marked limitations in "moving about and manipulating objects" and "the ability to care for himself," and no limitations in "acquiring and using information", "attending and completing tasks," and "interacting and relating with others."

9

(A.R. 25-29).

      **D.**      <u>**Plaintiff's Objections**</u>

J.R. raises five objections to the ALJ's decision. She contends that the ALJ erred by (1) failing to properly evaluate opinion evidence; (2) failing to properly assess non-medical source evidence; (3) failing to consider Listing 100.05; (4) improperly assessing J.O.'s functional equivalence domain of "moving about and manipulating objects"; and (5) failing to evaluate subjective complaints properly.

      **1.**      <u>**ALJ's Evaluation of Opinion Evidence**</u>

First, J.R. contends that the ALJ failed to properly evaluate the medical and consultant opinion evidence. Specifically, she asserts that the ALJ was required to afford more weight to the opinions of J.O.'s treating physicians under the guidelines laid out in 20 C.F.R. §416.920c(c)(1)-(5). She also contends that the ALJ gave improper weight to consultant opinions based on incomplete medical records, and that the ALJ improperly substituted his lay opinion for medical opinion.

The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). When determining what weight to assign to a medical-source opinion, the ALJ must consider the opinion's "supportability and consistency with the rest of the record," giving these considerations more weight than other relevant factors, including "the source's relationship with the claimant." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018). In fact, supportability and consistency "are usually the only factors the ALJ is required to articulate." *Harrison v. Saul*, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021). This means that a "medical opinion without supporting evidence, or

10

one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." *Id.* (quoting REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. at 5854). "An ALJ's decision to accord a treating physician's opinion with little weight will be sustained on review so long as one of the reasons given by the ALJ is proper and adequately supported." *Id.* at *6.

Here, the ALJ properly weighed the evaluations from Dr. Yoffe and Dr. Brazauskas. He considered each evaluation's supportability and consistency in light of other evidence in the case. (A.R. 23-24). He found that their evaluations conflicted with other information in the record, leading him to discount their claims. (A.R. 23-24). To justify that decision, he pointed to the inconsistency between Dr. Yoffe's January 2022 and May 2022 evaluations, which he found to be insufficiently explained. (A.R. 23). And he found that both Dr. Yoffe's and Dr. Brazauskas's conclusions that J.O. had a marked impairment in moving about and manipulating objects contradicted other evidence in the record, including evidence that J.O. regularly "walks, throws a ball, rides a bike, uses scissors, plays video games, and dresses and undresses dolls and action figures." (A.R. 23-24). Accordingly, the ALJ provided sufficient support for his opinion discounting the evaluations of the treating physicians based on inconsistencies in the record.

J.R. further contends that the ALJ failed to appropriately discount the evaluations of Dr. Campion, Dr. Goulding, and Dr. Ostrow. She contends that those evaluations did not appropriately account for J.O.'s ongoing challenges in 2021-2022, and therefore the ALJ could not rely on them to discount the evaluations of the treating physicians.

The opinion of a non-examining consultant cannot serve as substantial evidence if it is "based on a significantly incomplete record" and is "not well justified." *Alcantara v. Astrue*, 257 Fed. Appx. 333, 334 (1st Cir. 2007) (per curiam). "The record is significantly incomplete if the

11

evidence added after the consultant's review materially changed the basis for assessing the claimant's limitations." *Blakley v. Saul*, 2019 WL 4668020, at *5 (D.N.H. Sept. 25, 2019). But the record remains materially unchanged "where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment." *Id.* (quoting *Giandomenico v. U.S. Soc. Sec. Admin.*, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017)). Thus, "an ALJ may rely on [state agency] opinion[s] where the evidence postdating the reviewer's assessment does not establish any greater limitations." *Abubakar v. Astrue*, 2012 WL 957623, at *12 (D. Mass. Mar. 21, 2012) (quoting *Ferland v. Astrue*, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011)).

Here, the ALJ found the opinions of Dr. Campion, Dr. Goulding, and Dr. Ostrow, to be "partially persuasive." (A.R. 22-23). None of them, however, had access to the complete record made available to the ALJ when he determined that J.O. was not disabled. (A.R. 23). Dr. Campion conducted her evaluation on October 26, 2020. (A.R. 95). Dr. Goulding conducted his evaluation on April 14, 2021. (A.R. 97). And Dr. Ostrow testified on May 17, 2022. (A.R. 39-40). There are dozens of pages of records from hospitals, physicians, and schools after October 26, 2020. (A.R. 1030-1110, 1115-1152, 1159-1171, 1172-1192, 1197-98, 1207-17). But J.R. has not identified which, if any, of these new records suggest "greater limitations" than those suggested by the records from which each consultant drew conclusions. *Abubakar*, 2012 WL 957623, at *12.

It is true that Dr. Campion reviewed J.O.'s record before his hospitalization in March 2021, and in her analysis referred to the fact that many years had elapsed since J.O.'s last hospitalization. (A.R. 92). Nevertheless, J.O.'s hospitalization in March 2021 did not indicate any dramatic change in his condition or limitations. It reflected, as J.O.'s treating physician

12

explained, that his symptoms were "poorly controlled" in the winter of 2021, not that the long-term equilibrium of his illness had changed. (A.R. 1195). Moreover, Dr. Campion's evaluation overlapped substantially with Dr. Goulding's post-hospitalization assessment. (A.R. 22-23). This demonstrates "arguabl[e] consisten[cy]" between the evidence of J.O.'s hospitalization and Dr. Campion's assessment. *Blakley*, 2019 WL 4668020, at *5. And it was this consistency that the ALJ used to justify finding Dr. Campion's evaluation partially persuasive. (A.R. 23). Accordingly, the absence of evidence from the March 2021 hospitalization in Dr. Campion's assessment does not provide basis for remand. And J.R. has pointed to no other evidence that would have materially changed the records before Dr. Campion, Dr. Goulding, and Dr. Ostrow. J.R. has failed to demonstrate that the records reviewed by Drs. Campion, Goulding, and Ostrow were significantly incomplete.

J.R. further contends that the ALJ improperly substituted his lay opinion on issues reserved for medical expertise. She argues that he did this by cherry-picking evidence and failing to re-call a medical expert to testify.

An ALJ is permitted to make "common-sense judgments about functional capacity based on medical findings," even if he cannot "overstep the bounds of a lay person's competence and render a medical judgment." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990); *Beyene v. Astrue*, 739 F. Supp. 2d 77, 83 (D. Mass. 2010). In fact, it is precisely the ALJ's job to weigh and credit medical evidence. *See* 20 C.F.R. § 416.920c.

In this case, the alleged "cherry-picking" the plaintiff challenges is simply a synthesis and evaluation consistent with the guidelines set out in 20 C.F.R. § 416.920c(c)(1)-(5) (describing factors guiding ALJ's discretion to weigh and discount medical opinions). Accordingly, there is no basis to seek remand because the ALJ improperly relied on lay opinion.

J.R. further contends that remand is required because the ALJ had a duty to develop the record, especially to elicit the reasons behind Dr. Yoffe's change in evaluation between January 2022 and May 2022.

Because "social security proceedings 'are not strictly adversarial,'" an ALJ has a duty to ensure "adequate development of the record." *Evangelista*, 826 F.2d at 142 (quoting *Miranda v. Secretary of HEW,* 514 F.2d at 998). But even where the record is not fully developed, "remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Veiga v. Colvin*, 5 F. Supp. 3d 169, 177 (D. Mass. 2014) (quoting *Evangelista,* 826 F.2d at 139); *see also Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991). Furthermore, a plaintiff must demonstrate good cause for failing to introduce the evidence at the hearing. *See Heggarty*, 947 F.2d at 997.

Here, J.R. has not made the requisite showing to warrant remand. She has not demonstrated that further evidence is necessary to develop the facts of the case fully. She provided thousands of pages of documents to support her application, but she has not pointed to any information in those documents, or any other evidence that would have likely altered the findings of the ALJ, even if he had sought to ascertain the basis for Dr. Yoffe's change of position. While clarifying information may have provided additional support for J.R.'s claim, there has been no showing that the information would have been material. Accordingly, remand is not warranted on the basis that the ALJ failed to develop the record adequately.

In summary, the ALJ's treatment of medical-opinion evidence does not warrant remand.

    **2.**    **ALJ's Assessment of Non-Medical Source Evidence**

J.R. next contends that the ALJ failed to properly assess non-medical source evidence. Specifically, she asserts that the ALJ should have considered the evidence submitted from J.O.'s

14

grandmother, M.E., and her boyfriend, M.H., when assessing his functional limitations, as required by 20 C.F.R. § 416.926a(e)(1)(i).  She argues that the ALJ improperly dismissed their claims as inconsistent with objective medical evidence because the ALJ mischaracterized the claims.

When deciding whether a child's severe impairment constitutes a marked or extreme functional limitation, the ALJ must consider "all the relevant information in [the claimant's] case record that helps [the ALJ] determine [the claimant's] functioning, including . . . the descriptions [the ALJ] ha[s] about [the claimant's] functioning from [his] parents, teachers, and other people who know [him]."  20 C.F.R. § 416.926a(e)(1)(i).  However, consideration is not the same as endorsement.  The ALJ may decline to "take[ ] into account" "any symptom-related functional limitations and restrictions that . . . nonmedical sources report," if those limitations cannot "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(3).  Furthermore, the ALJ need not "articulate how [he] considered evidence from nonmedical sources" in the same way required for medical source opinions. 20 C.F.R. § 416.920c(d).

Here, the ALJ appropriately considered the evidence provided by J.O.'s grandmother, M.E., and her boyfriend, M.H.  He discussed their experiences, but ultimately found "the accuracy of their opinions . . . questionable" because their assessments of J.O.'s health were couched in medical terms and were "contradicted by the opinions of Dr. Ostrow, Dr. Campion, and Dr. Goulding."  (A.R. 24).  That constitutes sufficient consideration of the nonmedical evidence.

The ALJ's apparent misstatement of one item of evidence does not change that conclusion.  M.H. stated that J.O. has difficulty breathing "60-80 percent of the time," which the

ALJ interpreted as J.O. having difficulty breathing "80 percent of the day." (A.R. 24, 418). Even if that statement was an error, plaintiff has not shown that the ALJ's reason for discounting this testimony turned on the error.  The ALJ found that their statements were unpersuasive because they were inconsistent with objective medical evidence while primarily attesting to "dates, frequencies, types and degrees of medical signs and symptoms" that were properly within the realm of medical expertise.  (A.R. 24).  Even had the ALJ recounted M.H.'s statement as the plaintiff suggests, or said nothing at all about it, the inconsistency with credited medical opinion would persist.  In short, the ALJ considered all the evidence, which was all he was required to do to ensure his evaluation was supported by substantial evidence.  *See* 20 C.F.R. § 416.926a(e)(1)(i).  Accordingly, remand is not required for reconsideration of non-medical source opinions.

### 3. ALJ's Assessment of Listing 100.05

J.R. next contends that the ALJ failed to consider J.O.'s qualification for impairment listing 100.05, "failure to thrive in children from age two to three."   20 C.F.R. Pt. 404, Subpt. P, App. 1.  She argues that even if the ALJ correctly described J.O.'s developmental delays as non-severe, he was nonetheless obligated to consider how all of those impairments combined might equal a relevant listed impairment.

Listing 100.05 "require[s] documentation of an infant or toddler's growth failure and developmental delay." 20 C.F.R. Pt. 404, Subpt. P, App. 1.  But "[a]fter the attainment of age 3, [SSA] evaluate[s] growth failure under the affected body system(s)," rather than under the general framework described in Listing 100.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

J.O. clearly does not qualify for this disability designation, because he is ten years old. Even if he had qualified for the listing between the ages of two and three, his disability would

16

have had to be re-ascribed to another, body-system listing upon his attainment of age three. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Accordingly, the ALJ did not err in failing to consider J.O.'s qualification for listing 100.05, and no remand is required on that basis.

### 4.     ALJ's Assessment of Functional Equivalence Domains

J.R. next contends that the ALJ erred when he determined that J.O.'s functional impairment in the domain of moving about and manipulating objects was less than marked. She first argues that the ALJ made a factual error when he stated that J.O. received no special accommodations in the school setting. (A.R. 25). She then argues that the ALJ failed to address Dr. Ostrow's statement on cross-examination that J.O. could have difficulty walking, running, or "doing anything" when having an asthma attack. (A.R. 53-54). She argues that these errors together suggest that the ALJ's functional assessment was not supported by substantial evidence.

Substantial evidence is lacking only if no "reasonable mind might accept" the record "as adequate to support [the ALJ's] conclusion" about the claimant's impairments. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). An impairment is considered a "marked" limitation if it "interferes seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(2)(i). That corresponds, roughly, with functioning between two and three standard deviations below the mean, or between the 0.03 and 2.0 percentile. *See id*. The functional domain at issue in this appeal is moving about and manipulating objects, which assesses a child's fine and gross motor skills, how well they move themselves, and how well they move things in their environment. *See* 20 C.F.R. § 416.926a(j).

Here, the record reflects substantial evidence that J.O.'s limitations in moving about and manipulating objects are less than marked. He "walks, throws a ball, rides a bike, uses scissors,

17

plays video games, and dresses and undresses dolls and action figures." (A.R. 311). He participates in gym class and plays baseball. (A.R. 70, 74). He walks with a normal gait and performs a normal range of movements with the musculoskeletal system. (A.R. 1035). And J.O.'s doctors regularly advised him to exercise, with the use of albuterol as needed. (A.R. 1163, 1169, 1211). His use of albuterol before activities and the episodic limitations associated with asthma attacks do not undermine the substantial evidence supporting the ALJ's conclusion that J.O.'s limitations in moving about and manipulating objects are less than marked. Accordingly, there is no basis for remand on that ground.

### 5. ALJ's Evaluation of Subjective Complaints

Finally, J.R. contends that the ALJ failed to appropriately evaluate her description of J.O.'s subjective complaints. She argues that the ALJ did not provide legitimate reasons for discounting these complaints, and should have afforded them significant weight. She makes these claims about "subjective complaints" generally, but appears to focus on subjective complaints of shortness of breath. (E.C.F. 10 at 18-19).

Although an ALJ is not required to take subjective complaints as true, he may not reject them solely because they are inconsistent with the medical record. *See Pires v. Astrue*, 553 F. Supp. 2d 15, 23 (D. Mass. 2008); *see also* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Any finding that the claimant's subjective complaints are not credible must be supported by substantial evidence, and "the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26

(1st Cir. 1986); *see also* SSR 16-3p, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

The ALJ determined that J.R.'s statements about the intensity, persistence, and limiting effects of J.O's symptoms were "not entirely consistent with the medical evidence and other evidence in the record," but credited them enough to find J.O.'s impairments in health and well-being marked. (A.R. 21, 29). He found that J.O.'s impairments were marked, rather than extreme, because J.O. "ha[d] not received emergency room treatment or . . . been hospitalized in the past year, and ha[d] never been intubated." (A.R. 29-30). This finding was consistent with every physician's evaluation and with J.R.'s own testimony. (A.R. 30). But the ALJ found J.O.'s impairments in moving about and manipulating objects less than marked, notwithstanding J.R.'s testimony. (A.R. 27). The ALJ based that determination on the fact that J.O. participates in gym and recess without limitation, walks with a normal gait, performs a normal range of movements, and, as J.R. testified, "throws a ball, rides a bike, uses scissors, plays video games, and dresses and undresses himself." (A.R. 28).

As set forth above, those findings constitute substantial evidence. And they are described in sufficient detail to explain why J.R.'s testimony was not fully persuasive. Accordingly, there is no basis to remand to the ALJ for further consideration of subjective complaints.

## II.     Conclusion

For the foregoing reasons, plaintiff's motion for an order to reverse the final decision of the Commissioner of the Social Security Administration is DENIED, and the Commissioner's motion to affirm the action is GRANTED.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor IV |
|  | F. Dennis Saylor IV |
| Dated:  September 12, 2024 | Chief Judge, United States District Court |